IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ERROL YOUNG, TDCJ #01273716, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-4050 |
| | § | |
| TDCJ, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

State inmate Errol Young has filed a Prisoner's Civil Rights Complaint under 42 U.S.C. § 1983 ("Complaint") (Docket Entry No. 1), alleging that he was denied adequate medical care or that his access to care was delayed while he was incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"). At the court's request Young has provided Plaintiff's More Definite Statement ("Plaintiff's MDS") (Docket Entry No. 8) and the State Attorney General's Office has further supplemented the pleadings with a report under Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1987) ("Martinez Report") (Docket Entry No. 13), which includes an affidavit from a physician and selected medical records. One of the defendants, Dr. Fred L. Speck, III, has filed a separate Martinez Report ("Dr. Speck's Martinez Report") (Docket Entry No. 14), which includes briefing on

affirmative defenses, several affidavits, and approximately 5000 pages of medical records. Because Dr. Speck argues that Young fails to state a valid claim for relief, the court construed Dr. Speck's Martinez Report as a motion for summary judgment and gave Young additional time to respond (Docket Entry No. 19, p. 2). Young has filed a response to both of the Martinez Reports (Docket Entry Nos. 23, 24). After considering all of the pleadings, exhibits, and the applicable law, Young's claims against Dr. Speck and another physician, Dr. Kenneth Caldwell, will be dismissed for the reasons explained below. The court will issue a separate order requesting an answer from the other defendants on Young's remaining claims.

## I. Background

Young is presently incarcerated at the Pack Unit in Navasota, Texas.[1] The defendants in this case are (1) TDCJ; (2) the University of Texas Medical Branch ("UTMB"); (3) TDCJ Director Lorie Davis; (4) UTMB Director Owen Murray; (5) Dr. Fred L. Speck, who is an orthopedic surgeon employed by UTMB; (6) Director Lanette Lithicum of the TDCJ Health Services Division; (7) Senior Warden Robert Herrera; (8) Assistant Warden Donald Bilnoski; (9) Dr. Fausto Avila; (10) Nurse Practitioner ("N.P.")

---

[1]Complaint, Docket Entry No. 1, p. 2. For purposes of identification, all page numbers refer to the pagination imprinted by the court's electronic filing system, CM/ECF.

Chukuwumerije; (11) Dr. Friedman; (12) N.P. Onwukwe; (13) Practice Manager Lindley; (14) Practice Manager Stoker; (15) Dr. Fisher; and (16) Dr. Kenneth Caldwell, who is an orthopedic surgeon at Conroe Regional Hospital.[2]

Young was first admitted to TDCJ in 2005.[3] Since 1994, when Young sustained a gunshot wound to the spine, he has been a "T8 paraplegic," referencing the "eighth thoracic vertebrae," which means that he is paralyzed below the chest and diaphragm.[4] As a result of that injury, Young is confined to a wheelchair.[5]

While incarcerated at the Pack Unit on December 16, 2015, Young fell from his wheelchair and fractured the femur above the knee of his left leg.[6] Young was evaluated initially in the medical department at the Pack Unit and then sent by ambulance to the emergency room at the Huntsville Memorial Hospital for X-rays

---

[2]Id. at 3, 6-7. Although Young lists the UTMB "Correctional Managed Care" Committee as a defendant, the court construes his claims to be against UTMB. In addition, the court notes that Young has identified Dr. Kenneth Caldwell as the "Dr. John Doe" listed initially as the surgeon who treated him at Conroe Regional Medical Center. See Plaintiff's Response to Defendants Amicus Curiae Martinez Report, Docket Entry No. 23, p. 3. Therefore, the court substitutes Dr. Caldwell as a defendant in place of Dr. John Doe.

[3]Plaintiff's MDS, Docket Entry No. 8, p. 1.

[4]Id. at 2.

[5]Id.

[6]Complaint, Docket Entry No. 1, p. 4.

and further evaluation.[7]  Young contends that he was then sent by ambulance to Conroe Regional Medical Center for "emergency surgery."[8]

Young was examined at the Conroe Regional Medical Center by Dr. Caldwell, who determined that Young did not need surgery and instead placed a cast on Young's broken leg.[9]  Young was reportedly told that a cast would be sufficient instead of surgery because he had sustained a "clean break."[10]

After spending two days at the Conroe Regional Medical Center, Young was transferred to the UTMB John Sealy Hospital ("UTMB Hospital") in Galveston on December 17, 2015,[11] after he was found to have a fever.[12]  Young identifies Dr. Speck as one of the treatment providers who cared for him at the UTMB Hospital in Galveston.[13]  According to the record,[14] Dr. Speck is an orthopedic

---

[7]Id.

[8]Id.

[9]Id.

[10]Id. at 7.

[11]Id.

[12]Martinez Report, Exhibit A, Affidavit of Dr. Steven Bowers, M.D. ("Bowers Affidavit"), Docket Entry No. 13-1, p. 3.

[13]Plaintiff's MDS, Docket Entry No. 8, p. 11.

[14]Dr. Speck's Martinez Report, Exhibit A, Affidavit of Mark Foreman, M.D. ("Foreman Affidavit"), Docket Entry No. 14-1, pp. 2-4; and Exhibit E, Affidavit of Fred L. Speck, III, M.D. ("Speck Affidavit"), Docket Entry No. 14-5, pp. 2-3.

surgeon and faculty member at UTMB, who evaluated Young for the first time on December 18, 2015, after Young's left leg had been placed in a cast at the Conroe Regional Medical Center.[15] On that occasion, Dr. Speck observed that the cast was well fitting and appropriate after evaluating X-rays of Young's bone alignment.[16]

Young stayed at the UTMB Hospital for further evaluation and testing for infection.[17] After no infection was found, Young was discharged from the UTMB Hospital on December 21, 2015, and transferred to the Beto Unit infirmary for "aftercare,"[18] which included physical therapy.[19] Young was scheduled to return to the UTMB Hospital for monthly follow-up evaluations.[20]

Young returned to the UTMB Hospital again on February 11, 2016, where Dr. Speck ordered Young's cast removed to assess the progression of his healing.[21] Dr. Speck conducted a physical examination and consulted radiographs that indicated the alignment of Young's left femur was in "an acceptable position."[22] Dr. Speck

---

[15]Foreman Affidavit, Docket Entry No. 14-1, p. 2.

[16]Id.

[17]Complaint, Docket Entry No. 1, p. 7.

[18]Id.

[19]Bowers Affidavit, Docket Entry No. 13-1, p. 4.

[20]Id.

[21]Foreman Affidavit, Docket Entry No. 14-1, p. 3.

[22]Id.

recommended that Young use a "soft knee immobilizer" and ordered Young to return in one month.[23]

On March 24, 2016, Young was examined in the orthopedic clinic at the UTMB Hospital by a resident (Dr. Stautberg) who reported to Dr. Speck.[24] Young denied any pain during the visit.[25] Imaging disclosed a "displaced and angulated supracondylar femur fracture."[26] The primary diagnosis was noted as a "[f]racture of the left femur, closed, with routine healing[.]"[27] The plan of care was for Young to continue using a knee immobilizer and to take pain medication as dictated by the unit physician.[28] The plan also called for a follow-up visit in one month.[29]

At the end of March 2016, Young was transferred from the Beto Unit back to the Pack Unit.[30] Young contends that officials at the Pack Unit failed to transport him to UTMB for a follow-up visit as directed.[31] On May 15, 2016, Young "began notifying medical about

---

[23]Id.

[24]UTMB Progress Notes, Docket Entry No. 13-1, p. 56.

[25]Id. at 56, 58.

[26]Id. at 58.

[27]Id. at 56, 59.

[28]Id. at 58.

[29]Id.

[30]Complaint, Docket Entry No. 1, p. 7.

[31]Id. at 7-8, 12.

[the] failure to provide transportation" to his appointments at the UTMB Hospital in Galveston.[32] On July 26, 2016, Young filed a written request to reschedule his appointment at UTMB.[33] The request indicates that he had an appointment scheduled for June 2016, which was cancelled due to flooding and never rescheduled.[34]

Young did not return to the UTMB Hospital until October 6, 2016, when he was seen by Dr. Speck and another physician (Dr. Janney).[35] An X-ray disclosed that the fractured femur was "healed" and in "adequate alignment,"[36] but Young was unable to flex his knee, which caused mobility issues that made it difficult to position himself in his wheelchair.[37] Young was diagnosed with arthrofibrosis of the knee with limited range of motion.[38] Young was offered arthroscopic knee surgery that included "knee manipulation" as an option to treat the loss of flexion and Young agreed to the surgery after he was warned that the procedure could result in a fracture of the patella or knee bone.[39]

---

[32]Id. at 12.

[33]I-60 Request Form, Docket Entry No. 14-4, p. 3305.

[34]Id.

[35]Foreman Affidavit, Docket Entry No. 14-1, p. 3.

[36]UTMB Operative Note, Docket Entry No. 14-2, p. 217.

[37]Foreman Affidavit, Docket Entry No. 14-1, p. 3.

[38]UTMB Progress Notes, Docket Entry No. 14-2, p. 202.

[39]See id.; see also Foreman Affidavit, Docket Entry No. 14-1, p. 3.

The surgery was performed on October 17, 2016, by a resident (Dr. Zubhair) who was under Dr. Speck's supervision.[40] Young tolerated the procedure well and a 90-degree range of motion was achieved "interoperatively, after manipulation," but the procedure resulted in a fractured patella.[41] Dr. Speck concluded that further surgery to repair the patella was not an option due to Young's medical history, which included severe osteoporosis from his long-term paralysis, and other risk factors.[42] Young was discharged following the surgery and transported to his assigned unit that same day on October 17, 2016.[43] Young was referred for physical therapy and his treatment was followed by other providers, but Dr. Speck had no further involvement in his care.[44]

Young contends that after he returned to the Pack Unit on October 17, 2016, N.P. Chukuwumerije and Dr. Avila, who serves as Medical Director for the Pack Unit, "ignored" the orders given by specialists for post-operative "range of motion manipulation" and failed to arrange transportation to UTMB for a follow-up appointment.[45] Young, who continued to experience stiffness and

---

[40]UTMB Health Operative Note, Docket Entry No. 14-2, p. 214.

[41]Foreman Affidavit, Docket Entry No. 14-1, p. 3.

[42]Id.; see also UTMB Encounter Notes, Docket Entry No. 14-2, pp. 213-15.

[43]UTMB Nursing Note, Docket Entry No. 14-2, pp. 219-20.

[44]Foreman Affidavit, Docket Entry No. 14-1, p. 3.

[45]Complaint, Docket Entry No. 1, p. 8.

limited range of motion in his left knee, was transferred from the Pack Unit to the Jester III Unit in August of 2017.[46] He was not seen at the UTMB Hospital again until September of 2017.[47] Young was then reportedly told that "because of long delay scar tissue had accumulated and set-in preventing [the] likelihood of any effective surgical intervention" to treat the stiffness in his left knee.[48] Nevertheless, Young was referred for possible surgery by the "Ortho-Spine" Department at the UTMB Hospital.[49]

While Young remained at the Jester III Unit, he requested gabapentin, which he describes as a "non-formulary . . . neuropathic pain medication," due to the "extreme cold temperatures" in his cell.[50] Young contends that N.P. Onwukwe and Dr. Friedman, who serves as Medical Director for the Jester III Unit, failed to provide him with gabapentin and further failed to provide transportation for his "off-site clinic appointments."[51] As a result, he was not seen by the UTMB Hospital Ortho-Spine Department until March 26, 2018.[52]

---

[46]Id. at 8-9.

[47]Id. at 9.

[48]Id.

[49]Id.

[50]Id.

[51]Id.

[52]Id.

At his appointment on March 26, 2018, the specialist who treated him would not recommend further surgical intervention "because of accumulated scar tissue."[53] The specialist also reportedly told Young that there were no "formulary agents" that would effectively alleviate the neuropathy associated with his spinal cord injury and prescribed "gabapentin/neurontin" for treatment of his "chronic and acute neuropathic pain."[54]

Young was eventually reassigned to the Pack Unit, where he was seen by N.P. Chukuwumerije in the medical department on April 4, 2018.[55] During that appointment Young complained that his neuropathic pain was exacerbated by air conditioning and high ceiling fans in his housing area.[56] Chukuwumerije submitted a request for gabapentin that day, but it was "deferred" by the clinical pharmacist (Dr. Fisher), due to an "improper dosage request, _i.e.,_ 900 mg/day versus 1600 mg/day (the minimum effective dosage) according to Dr. Fisher."[57] In the meantime, Young was given an alternative formulary medication (depakote) to treat his neuropathic pain.[58]

---

[53] Id.

[54] Id.

[55] Id.

[56] Id.

[57] Id. at 10.

[58] Id.

Two weeks later, Young contacted N.P. Chukuwumerije about the non-formulary request for gabapentin and complained about unspecified "side effects" of depakote, but she would not discuss it.[59] Citing the effects of air conditioning on his neuropathy and arthritis, Young "pleaded" with her for a medical pass so that he could receive an "out-of-season coat/jacket" to keep warm.[60] N.P. Chukuwumerije responded by doubling his dosage of depakote for nerve pain, but would not issue a coat/jacket pass, advising Young to make his request for additional clothing to the laundry department.[61]

On July 30, 2018, Young was seen by Dr. Avila, who re-submitted the non-formulary request for gabapentin at the correct minimum dosage of 1600 mg per day.[62] Because Dr. Avila failed to make reference to the order given by the specialist at the UTMB Hospital, the request was denied by Dr. Fisher.[63]

In his pending Complaint, which is dated October 19, 2018, Young contends that all of the defendants have violated his civil rights under the Eighth Amendment by denying him access to adequate

---

[59] Id.

[60] Id.

[61] Id.

[62] Id.

[63] Id. at 11.

medical care for issues associated with the broken femur in his left leg, including the stiffness in his knee and neuropathic pain.[64] Young appears to accuse TDCJ, UTMB, Lithicum, Warden Herrera, Assistant Warden Bilnoski, Dr. Avila and N.P. Chukuwumerije of violating the Eighth Amendment, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA") by failing to provide him with transportation for his off-site medical appointments, which interfered with or delayed his access to medical care.[65] Young further contends that Murray, Warden Herrera, Assistant Warden Donald Bilnoski, Practice Manager Lindley, and Practice Manager Stoker have failed to train and supervise others or to adopt policies and procedures necessary to protect inmates with serious medical needs and to provide transportation for disabled inmates to specialty clinic appointments.[66] Young seeks declaratory and injunctive relief, as well as nominal, compensatory, and punitive damages.[67]

## II. **Standard of Review**

Because the plaintiff is a prisoner who proceeds in forma pauperis, the court is required to scrutinize the claims and

---

[64]Id. at 11-12, 14.

[65]Id. at 12-13.

[66]Id.; Plaintiff's MDS, Docket Entry No. 8, pp. 22-25.

[67]Complaint, Docket Entry No. 1, pp. 15-16.

dismiss the Complaint, in whole or in part, if it determines that the Complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B) (listing the same grounds); 42 U.S.C. § 1997e(c) (adding that a court "shall on its own motion or on the motion of a party" dismiss any action by a prisoner on the same grounds listed in § 1915A(b)). The Supreme Court has held that a complaint filed by a litigant who proceeds in forma pauperis may be dismissed as frivolous "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 109 S. Ct. 1827, 1831-32 (1989). In other words, a filing is "frivolous" if it "lacks an arguable basis in law or fact or if there is no realistic chance of ultimate success." Henthorn v. Swinson, 955 F.2d 351, 352 (5th Cir. 1992).

In this case the court requested a Martinez Report, which is a procedure that asks prison officials to investigate the facts surrounding a prisoner's civil rights claim and construct an administrative record. See Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978). Use of a Martinez Report has been approved by the Fifth Circuit in Cay v. Estelle, 317 F.2d 789 (5th Cir. 1986) and Parker v. Carpenter, 978 F.2d 190, 191 n. 2 (5th Cir. 1992), as a tool to supplement the pleadings and assist the court in making a determination of frivolity under 28 U.S.C. § 1915(e)(2)(B). See

Norton v. Dimazana, 122 F.3d 286, 292-93 (5th Cir. 1997); Johnson v. Seckler, 250 F. App'x 648, 649 n.1 (2007).

Because Dr. Speck submitted briefing that raised several affirmative defenses, the court converted Dr. Speck's Martinez Report to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d) and gave Young additional time to reply with any pertinent materials.[68] Therefore, the court treats Dr. Speck's Martinez Report as a motion governed by Fed. R. Civ. P. 56. Under this rule a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). If the movant demonstrates an "absence of evidentiary support in the record for the nonmovant's case," the burden shifts to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial." Sanchez v. Young County, Texas, 866 F.3d 274, 279 (citing Cuadra v. Houston Indep. Sch. Dist., 626 F.3d 808, 812 (5th Cir. 2010)); see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." Dillon v. Rogers, 596 F.3d 260, 266 (5th

---

[68]Order dated September 10, 2019, Docket Entry No. 19, pp. 2-3).

Cir. 2010) (internal quotation marks and citation omitted). In conducting this review, the court is mindful that the plaintiff proceeds pro se in this case. Courts are required to give a pro se litigant's contentions, however inartfully pleaded, a liberal construction. See Erickson v. Pardus, 127 S. Ct. 1081, 2200 (2007) (citing Estelle v. Gamble, 97 S. Ct. 285, 292 (1976)); see also Haines v. Kerner, 92 S. Ct. 594, 595-96 (1972) (noting that allegations in a pro se complaint, however inartfully pleaded, are held to less stringent standards than formal pleadings drafted by lawyers). Even under this lenient standard, a pro se litigant is not excused from meeting his burden of proof by specifically referring to evidence in the summary judgment record and setting forth facts showing that there is a genuine issue of material fact remaining for trial. See Outley v. Luke & Assoc., Inc., 840 F.3d 212, 217 (5th Cir. 2016) (citations omitted); see also Bookman v. Shubzda, 945 F. Supp. 999, 1004 (N.D. Tex. 1996) (citations omitted).

### III. Discussion

**A.   Young's Claims Against Dr. Speck**

Young alleges that Dr. Speck "failed to detect that his left femur was not healing properly" and that his "left knee had been damaged."[69]   Young appears to contend, therefore, that Dr. Speck

---

[69]Plaintiff's MDS, Docket Entry No. 8, pp. 11-12.

violated his constitutional right to receive adequate medical care under the Eighth Amendment and he seeks damages under 42 U.S.C. § 1983. Dr. Speck contends that the claims against him should be dismissed as untimely and, in the alternative, for lack of merit. These arguments are addressed separately below.

1. <u>Statute of Limitations</u>

Dr. Speck acknowledges that he treated Young at the UTMB Hospital for the first time on December 18, 2015, and saw him at other times in 2016, but that his involvement with Young's medical care ended following the surgery that occurred on October 17, 2016, when Young was discharged to the Pack Unit.[70] Noting that Young's complaint is dated October 19, 2018,[71] Dr. Speck contends that all of Young's claims against him are barred by the governing two-year statute of limitations.[72]

Dr. Speck correctly notes that civil rights claims under 42 U.S.C. § 1983 are governed by the two-year statute of limitations provided by Texas law. <u>See Piotrowski v. City of Houston</u>, 237 F.3d

---

[70]Dr. Speck's Martinez Report, Docket Entry No. 14, pp. 13-16, 19.

[71]Although the Complaint was received for filing on October 25, 2016, a prisoner's <u>pro se</u> pleadings are considered filed under the prison mailbox rule on the date it is delivered to prison authorities for filing. <u>See Spotville v. Cain</u>, 149 F.3d 374, 377 (5th Cir. 1998). Using the date most favorable to Young, his Complaint is considered to have been filed on the date it was executed on October 19, 2016. <u>See</u> Complaint, Docket Entry No. 1, p. 5.

[72]Dr. Speck's Martinez Report, Docket Entry No. 14, pp. 19-20.

567, 576 (5th Cir. 2001); Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a). In particular, Texas law provides that health-care liability claims are subject to a strict two-year statute of limitations. See Tex. Civ. Prac. & Rem. Code § 74.251(a). This means that Young had two years from the time that his claims accrued to file a civil rights complaint concerning his allegations. See Gonzalez v. Wyatt, 157 F.3d 1016, 1020 (5th Cir. 1998).

Federal law determines when a cause of action accrues under § 1983. See Smith v. Regional Transit Auth., 827 F.3d 412, 421 (5th Cir. 2016). A claim generally accrues "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured" by actions attributable to the defendant. Piotrowski, 237 F.3d at 576. To the extent that Young faults Dr. Speck for failing to determine that his femur failed to heal properly, the record shows that Young became aware of the problem during his visit to the UTMB Hospital on October 6, 2016, when the diagnosis of arthrofibrosis was first made.[73] Likewise, Young knew about the damage to his knee (the fracture to his patella) following his arthroscopic surgery on October 17, 2016.[74]

---

[73]UTMB Progress Notes, Docket Entry No. 14-2, p. 202.

[74]UTMB Encounter Notes, Docket Entry No. 14-2, pp. 213-15; see also Foreman Affidavit, Docket Entry No. 14-1, p. 3.

The record confirms that all of the complained of encounters with Dr. Speck occurred outside the two-year limitations period, which expired before Young executed his Complaint on October 19, 2018. Therefore, Young's claims against Dr. Speck are barred by the two-year statute of limitations and those claims will be dismissed as legally frivolous. See Gartrell v. Gaylor, 981 F.2d 254, 256 (5th Cir. 1993).

### 2. Official Immunity

Asserting official immunity under the Eleventh Amendment, Dr. Speck has provided an affidavit showing that he provided care to Young during the scope of his employment with UTMB, which is a state agency.[75] Unless expressly waived, the Eleventh Amendment bars an action in federal court by a citizen of a state against his or her own state, including a state agency. See Martinez v. Texas Dep't of Criminal Justice, 300 F.3d 567, 574 (5th Cir. 2002). The Eleventh Amendment also bars a recovery of money damages under 42 U.S.C. § 1983 from state employees in their official capacity. See Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2001); Aguilar v. Texas Dep't of Criminal Justice, 160 F.3d 1052, 1054 (5th Cir. 1998). Because it is undisputed that Dr. Speck treated Young

---

[75]Dr. Speck's Martinez Report, Docket Entry No. 14, pp. 20-21. Although Young does not lodge any state-law claims, Dr. Speck also asserts immunity under the Texas Tort Claims Act, Tex. Civ. Prac. & Rem. Code § 101.106(f), because all of the actions taken in this case were performed in the scope of his employment with UTMB. See id. at 21-23.

during the scope of his employment with a state agency, the court will dismiss the claims for monetary damages against Dr. Speck in his official capacity.

### 3. <u>No Deliberate Indifference Under the Eighth Amendment</u>

Dr. Speck further contends that he did not deny Young adequate medical care in violation of the Eighth Amendment for purposes of making a claim under 42 U.S.C. § 1983. To state an actionable claim for the denial of adequate medical care under § 1983, a prisoner must demonstrate that prison officials violated the Eighth Amendment by acting with "deliberate indifference to a prisoner's serious illness or injury[.]" <u>Estelle v. Gamble,</u> 97 S. Ct. 285, 291 (1976). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Farmer v. Brennan,</u> 114 S. Ct. 1970, 1984 (1994); <u>Jones v. Texas Dep't of Criminal Justice,</u> 880 F.3d 756 (5th Cir. 2018).

The Eighth Amendment deliberate indifference standard is an "extremely high" one to meet. <u>Domino v. Texas Dep't of Criminal Justice,</u> 239 F.3d 752, 756 (5th Cir. 2001). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exigent circumstances." <u>Gobert v. Caldwell,</u> 463 F.3d 339, 346 (5th Cir.

2006). A showing of deliberate indifference under these circumstances requires the prisoner to demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. (citation and internal quotation marks omitted).

It is evident from the voluminous medical records provided in this case that Young received extensive care for his broken femur from Dr. Speck and other providers at UTMB. Where the medical records demonstrate that appropriate care was provided, any claim that a prisoner was denied medical treatment lacks merit. See Varnardo v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); McCord v. Maggio, 910 F.2d 1248, 1251 (5th Cir. 1990) (upholding the dismissal of a deliberate indifference to medical needs claim where medical records document that the prisoner was not denied medical attention).

To the extent that Young contends that Dr. Speck failed to detect that his left femur was not healing correctly, allegations of this sort are insufficient to establish deliberate indifference in violation of the Eighth Amendment. See Gobert, 463 F.3d at 346. Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation. See Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999) (citing Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir.

1993)). Thus, allegations of inadvertent failure to provide adequate medical care, or of a negligent diagnosis, simply fail to establish the requisite culpable state of mind. See Domino, 239 F.3d at 756 (noting that "an incorrect diagnosis does not amount to deliberate indifference").

Furthermore, although Young appears to fault the decision not to perform additional surgery on his fractured patella, a prisoner's disagreement with treatment decisions does not state an actionable claim under the Eighth Amendment. See Gobert, 463 F.3d at 346. As the Supreme Court has clarified, whether "additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." Estelle v. Gamble, 97 S. Ct. 285, 293 (1976). A medical decision not to order a certain form of treatment "does not represent cruel and unusual punishment." Id.

Likewise, to the extent that there was delay in receiving care at UTMB due to transportation issues or inclement weather, Young does not allege facts showing that any delay was attributable to Dr. Speck, who is a surgeon and not responsible for arranging for the transport of prisoners or any other patient treated at UTMB. Because Young does not allege facts showing that Dr. Speck denied him medical care with deliberate indifference or violated any other federally protected right for purposes of a claim under 42 U.S.C. § 1983, Dr. Speck is entitled to summary judgment on the claims

against him. Alternatively, the court concludes that Young's complaint against Dr. Speck is subject to dismissal as legally frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

**B. Young's Claims Against Dr. Caldwell**

Young contends that he was denied adequate care by Dr. Caldwell at Conroe Regional Medical Center, because Dr. Caldwell placed him in a cast rather than performing emergency surgery to "set and stabilize" his fractured femur in December 2015.[76] For the same reasons discussed above in connection with the claims against Dr. Speck, the care provided to Young by Dr. Caldwell in December 2015 is well outside the two-year statute of limitations for making a claim under 42 U.S.C. § 1983. See Piotrowski, 237 F.3d at 576. Accordingly, the claims against Dr. Caldwell are also subject to dismissal as untimely and legally frivolous. See Gartrell, 981 F. 2d at 256.

Likewise, Young's allegation that Dr. Caldwell denied him adequate medical care by electing to place a cast on his leg rather than performing surgery amounts to no more than disagreement with a medical decision about treatment. This allegation does not demonstrate that Young was denied care with deliberate indifference and does not state an actionable claim under the Eighth Amendment.

---

[76]Plaintiff's MDS, Docket Entry No. 8, p. 19.

See Estelle, 97 S. Ct. at 293; Gobert, 463 F.3d at 346. For this additional reason, the claims against Dr. Caldwell will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

## C. Remaining Defendants and Claims

After reviewing all of the pleadings as required under 28 U.S.C. § 1915(e)(2)(B), the court concludes that an answer is needed from the remaining defendants. The court will issue a separate order requesting an answer regarding the following claims, which are summarized briefly below.

### 1. Denial of Medical Care

Young alleges that Dr. Friedman and N.P. Onwukwe denied him adequate pain medication in the form of gabapentin while he was at the Jester III Unit between November 2017 and March 2018.[77] Young alleges that Dr. Avila, N.P. Chukuwumerije, and Dr. Fisher denied him gabapentin at the Pack Unit between March 2018 and July 2018.[78] Young contends that these defendants, as well as Practice Manager Lindley and Practice Manager Stoker, violated his Eighth Amendment rights by causing the wanton infliction of pain.[79]

---

[77]Complaint, Docket Entry No. 1, p. 9; Plaintiff's MDS, Docket Entry No. 8, pp. 16-17.

[78]Complaint, Docket Entry No. 1, pp. 9-11; Plaintiff's MDS, Docket Entry No. 8, pp. 14-15, 20.

[79]Complaint, Docket Entry No. 1, p. 14.

2.  Delayed Access to Medical Care

Young contends that the following supervisory officials violated his constitutional rights by failing to ensure that he had adequate transportation to medical appointments, which delayed his access to care in violation of the Eighth Amendment: Lorie Davis, Warden Herrera, Lannette Lithicum, Assistant Warden Bilnoski, Practice Manager Lindley, and Practice Manager Stoker.[80]  Young appears to hold Warden Herrera primarily responsible for failing to ensure that the Pack Unit had a "wheelchair van" to transport him when necessary under existing prison policy.[81]  Young also faults Dr. Avila, Dr. Friedman, N.P. Onwukwe, and N.P. Chukuwumerije for failing to ensure that he had access to appropriate transportation.[82]

3.  Violations of the ADA and RA

Young contends that TDCJ, UTMB, and several individual defendants (Lithicum, Herrera, Lindley, Bilnoski, Avila, Chukuwumerije, Friedman, and Onwukwe) violated his rights under the ADA and RA by failing to ensure that he had access to transportation that was appropriate to accommodate his disability.[83]

---

[80]Plaintiff's MDS, Docket Entry No. 8, pp. 11-19.

[81]Plaintiff's Response to Defendants Amicus Curiae Martinez Report, Docket Entry No. 23, p. 5.

[82]Plaintiff's MDS, Docket Entry No. 8, pp. 14-17.

[83]Complaint, Docket Entry No. 1, pp. 12-13, 15.

### 4. Failure to Train/Supervise

Young contends that supervisory officials failed to "draft, adopt, and implement governing policies and procedures necessary to protect inmates with serious medical conditions/needs and provide transportation for disabled offenders to off-site specialty clinic appointments."[84]  Young identifies the following supervisory officials who have failed to provide adequate training and supervision: Owen Murray, Warden Herrera, Assistant Warden Bilnoski, Practice Manager Lindley, and Practice Manager Stoker.[85]

### IV. Conclusion and Order

Based on the foregoing, the court **ORDERS** as follows:

1.  The Martinez Report filed by Dr. Fred L. Speck III, which has been converted to a motion for summary judgment (Docket Entry No. 14), is **GRANTED** and the claims against Dr. Speck are **DISMISSED with prejudice**. Alternatively, the court concludes that Young's complaint against Dr. Speck is **DISMISSED with prejudice** as legally frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

2.  The claims against Dr. Kenneth Coleman are **DISMISSED with prejudice** as legally frivolous and

---

[84]Complaint, Docket Entry No. 1, p. 14.

[85]Plaintiff's MDS, Docket Entry No. 8, pp. 22-25.

for failure to state a claim pursuant to 28 U.S.C.
§ 1915(e)(2)(B).

3. The court will issue a separate order requesting an
answer from the other defendants on Young's
remaining claims.

**The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties of record and to the TDCJ - Office of the General Counsel, Capitol Station, P.O. Box 13084, Austin, Texas 78711, Fax: 512-936-2159.**

**SIGNED** at Houston, Texas, on this 19th day of February, 2020.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE