United States District Court
Southern District of Texas

**ENTERED**

December 31, 2020

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ERROL YOUNG, TDCJ #01273716, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-4050 |
| | § | |
| TDCJ, et al., | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

State inmate Errol Young has filed a Prisoner's Civil Rights
Complaint under 42 U.S.C. § 1983 ("Complaint") (Docket Entry
No. 1), alleging that he was denied adequate medical care for a leg
injury that he sustained while he was incarcerated in the Texas
Department of Criminal Justice – Correctional Institutions Division
("TDCJ"). At the court's request Young has provided Plaintiff's
More Definite Statement of his claims ("Plaintiff's MDS")(Docket
Entry No. 8) and the State Attorney General's Office has submitted
a report under Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1987)
("Martinez Report") (Docket Entry No. 13), which includes medical
records, affidavits, and other documentation about the care that
Young received.

Now pending before the court is a motion to dismiss under Fed.
R. Civ. P. 12(b) filed by TDCJ and several supervisory officials,

including former Director Lorie Davis, Director Lanette Linthicum of the TDCJ Health Services Division, Senior Warden Robert Herrera, and Assistant Warden Donald Bilnoski (the "TDCJ Defendants' Motion to Dismiss")(Docket Entry No. 29). Also pending is a motion for summary judgment filed by the University of Texas Medical Branch ("UTMB"), UTMB Director Owen Murray, and several health-care providers, including Dr. Fausto Avila, Nurse Practitioner ("N.P.") Ndi Chukwumerije, Dr. Robert Friedman, N.P. Lauretta Onwukwe, Practice Manager Anitra Lindley, Practice Manager Kolten Stoker, and Clinical Pharmacist Dr. Damien Fisher (the "UTMB Defendants' MSJ") (Docket Entry No. 39). Young has filed a response to both of the pending motions (Docket Entry Nos. 33, 49). After considering all of the pleadings, exhibits, and the applicable law, the court will grant the defendants' motions and will dismiss this case for the reasons set forth below.

## I. **Background**

The facts underlying Young's claims have been set forth previously and will not be repeated at length.[1] It is sufficient to note for purposes of the pending motions that Young, who was

---

[1]Memorandum Opinion and Order, Docket Entry No. 25, pp. 2-9 (dismissing claims against Dr. Fred L. Speck, who is an orthopedic surgeon employed by UTMB, and Dr. Kenneth Caldwell, who is an orthopedic surgeon at Conroe Regional Hospital, regarding the care Young initially received for his broken leg). For purposes of identification, all page numbers refer to the pagination imprinted by the court's electronic filing system, CM/ECF.

admitted to TDCJ in 2005, is a paraplegic who has been confined to a wheelchair since 1994.[2]

The injury that forms the basis for Young's Complaint occurred at the Pack Unit on December 16, 2015, when he fell from his wheelchair and fractured the femur above his left knee.[3]   After receiving X-rays in the emergency room at the Huntsville Memorial Hospital Young was transported to the Conroe Regional Medical Center, where a cast was placed on his broken leg.[4]   The following day Young was transferred to the UTMB John Sealy Hospital in Galveston ("UTMB Hospital"), for further testing and evaluation by orthopedic specialists.[5]   Young spent ten days in the UTMB Hospital before being transferred to the Beto I Unit for "aftercare."[6] While assigned to the Beto I Unit, Young was seen for monthly follow-up evaluations at the UTMB Hospital in February and March of 2016,[7] before he was re-assigned to the Pack Unit.[8]

Young contends that officials at the Pack Unit failed to

---

[2]Plaintiff's MDS, Docket Entry No. 8, pp. 1-2.

[3]Complaint, Docket Entry No. 1, p. 4.

[4]Id. at 4, 7.

[5]Id. at 7.

[6]Id.

[7]Martinez Report, Exhibit A, Affidavit of Mark Foreman, M.D. ("Foreman Affidavit"), Docket Entry No. 14-1, p. 3; UTMB Progress Notes, Docket Entry No. 13-1, p. 56.

[8]Complaint, Docket Entry No. 1, p. 7.

-3-

transport him to the UTMB Hospital for additional monthly follow-up visits and that he was not seen at the UTMB Hospital again until October 2016.[9]  When Young returned to the UTMB Hospital on October 6, 2016, an X-ray disclosed that the fractured femur was "healed,"[10] but Young was reportedly unable to flex his knee, which made it difficult to position himself in his wheelchair.[11]  On October 17, 2016, Young had knee surgery to improve his range of motion,[12] but the procedure resulted in a fractured patella.[13]  Young was discharged the same day as the surgery and returned to the Pack Unit with a referral for physical therapy.[14]

After he returned to the Pack Unit Young contends that N.P. Chukwumerije and Dr. Avila reportedly "ignored" the orders given by specialists at the UTMB Hospital for post-operative "range of motion manipulation" or physical therapy.[15]  Young contends that these defendants also failed to arrange for transportation to the

---

[9]*Id.* at 7-8, 12.

[10]Foreman Affidavit, Docket Entry No. 14-1, p. 3; UTMB Operative Note, Docket Entry No. 14-2, p. 217.

[11]Foreman Affidavit, Docket Entry No. 14-1, p. 3.

[12]UTMB Health Operative Note, Docket Entry No. 14-2, p. 214.

[13]Foreman Affidavit, Docket Entry No. 14-1, p. 3.

[14]UTMB Nursing Note, Docket Entry No. 14-2, pp. 219-20; Foreman Affidavit, Docket Entry No. 14-1, p. 3.

[15]Complaint, Docket Entry No. 1, p. 8.

UTMB Hospital so that he could attend follow-up appointments.[16]

In August of 2017, Young was transferred from the Pack Unit to the Jester III Unit.[17]  Young returned to the UTMB Hospital in September of 2017, where specialists advised him that any further "surgical intervention" would not be effective to treat lingering stiffness in his left knee due to the accumulation of scar tissue.[18] During that appointment, however, he was given a referral to see an "Ortho-Spine" specialist.[19]  When Young returned to the UTMB Hospital on March 26, 2018, the Ortho-Spine specialist also declined to recommend surgical intervention for his knee "because of accumulated scar tissue."[20]

Young contends that N.P. Onwukwe and Dr. Friedman, who serves as Medical Director for the Jester III Unit, failed to provide transportation for his "off-site clinic appointments" at the UTMB Hospital and that they further failed to provide him with adequate medication for neuropathic pain in the form of Gabapentin,[21] which

---

[16]Id.

[17]Id. at 8-9.

[18]Id.

[19]Id. at 9.

[20]Id.

[21]Id.   Young requested Gabapentin, which is a type of neuropathic pain medication that is also described in medical records as Neurontin. See, e.g., Electronic Correspondence between N.P. Chukwumerije and Wanda Moore, Docket Entry No. 39-2, p. 971
(continued...)

-5-

had been prescribed by specialists.[22]  Young contends that he was also denied adequate pain medication at the Pack Unit by N.P. Chukwumerije, Dr. Avila, and Dr. Fisher, and that he was further denied a medical pass for an "out-of-season coat/jacket" to keep warm in April of 2018.[23]

In his pending Complaint Young alleges that all of the defendants violated his civil rights under the Eighth Amendment by denying him access to adequate medical care for issues associated with the broken femur in his left leg, including the stiffness in his knee and neuropathic pain.[24]  Young accuses TDCJ, UTMB, Linthicum, Warden Herrera, Assistant Warden Bilnoski, Dr. Avila and N.P. Chukwumerije of violating the Eighth Amendment, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA") by failing to provide him with proper transportation for his off-site medical appointments, which interfered with or delayed his access to medical care.[25]  Young contends further that Murray, Warden Herrera, Assistant Warden Donald Bilnoski, Practice Manager

---

[21](...continued)
(Bates No. 969) (containing Dr. Fisher's recommendation for treatment with a "tricyclic" medication such as Nortriptyline instead of Neurontin or Gabapentin).  To avoid confusion, the court will refer to the medication requested by Young as Gabapentin.

[22]Complaint, Docket Entry No. 1, p. 9.

[23]Id.

[24]Id. at 10-12, 14.

[25]Id. at 12-13.

-6-

Lindley, and Practice Manager Stoker have failed to train and supervise others or to adopt policies and procedures necessary to protect inmates with serious medical needs and to provide transportation for disabled inmates to specialty clinic appointments.[26] Young seeks declaratory and injunctive relief, as well as nominal, compensatory, and punitive damages.[27]

The TDCJ Defendants have filed a joint motion to dismiss the claims against them under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Young's allegations are not sufficient to articulate a valid claim upon which relief may be granted.[28] The UTMB Defendants have filed a joint motion for summary judgment, arguing that Young failed to exhaust available administrative remedies and that he cannot otherwise show that he is entitled to prevail on any of his claims.[29]

## II.   Standards of Review

### A.   The Motion to Dismiss Under Rule 12(b)

The TDCJ Defendants have moved to dismiss some of Young's claims for lack of subject matter jurisdiction under Rule 12(b)(1)

---

[26]Id.; Plaintiff's MDS, Docket Entry No. 8, pp. 22-25.

[27]Complaint, Docket Entry No. 1, pp. 15-16.

[28]TDCJ Defendants' Motion to Dismiss, Docket Entry No. 29, pp. 4-14.

[29]UTMB Defendants' MSJ, Docket Entry No. 39, pp. 10-28.

-7-

of the Federal Rules of Civil Procedure.[30]   Federal courts are
"courts of limited jurisdiction, having 'only the authority endowed
by the Constitution and that conferred by Congress.'" Halmekangas
v. State Farm Fire and Cas. Co., 603 F.3d 290, 292 (5th Cir. 2010)
(citations omitted).   "A case is properly dismissed for lack of
subject matter jurisdiction when the court lacks the statutory or
constitutional power to adjudicate the case." Krim v. pcOrder.com,
Inc., 402 F.3d 489, 494 (5th Cir. 2005) (citations omitted).
Likewise, dismissal under Rule 12(b)(1) is appropriate if the
plaintiff lacks the requisite standing to sue.  See, e.g., Little
v. KPMG LLP, 575 F.3d 533, 540-41 (5th Cir. 2009) (affirming
dismissal for lack of standing under Rule 12(b)(1)).  When a Rule
12(b)(1) challenge is raised with other Rule 12 challenges, the
court should consider the Rule 12(b)(1) arguments before addressing
any attack on the merits.  See Ramming v. United States, 281 F.3d
158, 161 (5th Cir. 2001) (citing Hitt v. City of Pasadena, 561 F.2d
606, 608 (5th Cir. 1977) (per curiam)).

The TDCJ Defendants argue further that Young's Complaint must
be dismissed under Rule 12(b)(6) of the Federal Rules of Civil
Procedure.[31]  Motions to dismiss under Rule 12(b)(6) are appropriate
only where the plaintiff's complaint fails to state a claim upon

---

[30]TDCJ Defendants' Motion to Dismiss, Docket Entry No. 29, pp.
4-5.

[31]Id. at 5-6.

which relief can be granted.   In reviewing a motion under Rule
12(b)(6), a court must "accept[] all well-pleaded facts as true and
view[] those facts in the light most favorable to the plaintiff."
Bustos v. Martini Club, Inc., 599 F.3d 458, 461 (5th Cir. 2010)
(citation omitted).   To withstand a motion to dismiss, the factual
allegations in the complaint "must be enough to raise a right to
relief above the speculative level[.]" Bell Atlantic Corp. v.
Twombly, 127 S. Ct. 1955, 1965 (2007).   If the complaint has not
set forth "enough facts to state a claim to relief that is
plausible on its face," it must be dismissed.   Id. at 1974.

The plaintiff represents himself in this case and he has
capably done so.   Courts are required to give a pro se litigant's
contentions a liberal construction. See Erickson v. Pardus, 127 S.
Ct. 1081, 2200 (2007) (citing Estelle v. Gamble, 97 S. Ct. 285, 292
(1976)); see also Haines v. Kerner, 92 S. Ct. 594, 595-96 (1972)
(noting that allegations in a pro se complaint, however inartfully
pleaded, are held to less stringent standards than formal pleadings
drafted by lawyers).   Nevertheless, "[t]hreadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937,
1949 (2009) (citing Twombly, 127 S. Ct. at 1965).

**B.    The Motion for Summary Judgment**

The UTMB Defendants have filed a motion for summary judgment

-9-

under Rule 56 of the Federal Rules of Civil Procedure.[32]  Under this rule a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (2018); see also Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law.   Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  Id.

If the movant demonstrates an "absence of evidentiary support in the record for the nonmovant's case," the burden shifts to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial."  Sanchez v. Young County, Tex., 866 F.3d 274, 279 (5th Cir. 2017) (citing Cuadra v. Houston Indep. Sch. Dist., 626 F.3d 808, 812 (5th Cir. 2010)); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party."  Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010) (internal quotation marks and citation omitted). Although the plaintiff represents himself, a pro se litigant is not excused from meeting his burden of proof by specifically referring

---

[32]UTMB Defendants' MSJ, Docket Entry No. 39, pp. 10-12.

to evidence in the summary judgment record and setting forth facts showing that there is a genuine issue of material fact remaining for trial. See Outley v. Luke & Assoc., Inc., 840 F.3d 212, 217 (5th Cir. 2016) (citations omitted); see also Bookman v. Shubzda, 945 F. Supp. 999, 1004 (N.D. Tex. 1996) (citations omitted).

The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. See Diamond Offshore Co. v. A&B Builders, Inc., 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, the non-movant cannot avoid summary judgment by presenting "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." Jones v. Lowndes County, Miss., 678 F.3d 344, 348 (5th Cir. 2012) (quoting TIG Ins. Co. v. Sedgwick James of Washington, 276 F.3d 754, 759 (5th Cir. 2002)); see also Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence). Further, the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." Adams v. Travelers Indem. Co., 465 F.3d 156, 164 (5th Cir. 2006) (quotation omitted).

**C.    Qualified Immunity**

The defendants who are employed as supervisory officials and

-11-

health-care providers by TDCJ and UTMB have asserted qualified immunity from liability for claims seeking monetary relief from them in their individual or personal capacity.[33] Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. <u>See Harlow v. Fitzgerald</u>, 102 S. Ct. 2727, 2738 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 106 S. Ct. 1092, 1096 (1986). A plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." <u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074, 2080 (2011) (citation omitted).

While the TDCJ Defendants assert qualified immunity in their motion to dismiss under Rule 12(b),[34] the UTMB defendants assert that they are entitled to qualified immunity in a motion for summary judgment.[35] "A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." <u>King v. Handorf</u>, 821 F.3d 650, 653-54 (5th Cir. 2016) (internal quotation

---

[33]TDCJ Defendants' Motion to Dismiss, Docket Entry No. 29, pp. 6-7; UTMB Defendants' MSJ, Docket Entry No. 39, pp. 27-28.

[34]TDCJ Defendants' Motion to Dismiss, Docket Entry No. 29, pp. 6-7.

[35]UTMB Defendants' MSJ, Docket Entry No. 39, pp. 27-28.

marks omitted). "The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." Id. (quoting Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d 404, 419 (5th Cir. 2008)). "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'" Id. (quoting Manis v. Lawson, 585 F.3d 839, 843 (5th Cir. 2009)).

## III. Discussion

### A. Section 1983 Claims Against State Agencies and Officials

As an initial matter, both TDCJ and UTMB note that they are agencies of the State of Texas. See Tex. Gov't Code § 493.001 et seq.; Tex. Educ. Code § 65.01 et seq. As such, TDCJ, UTMB, and the individual defendants employed by these agencies argue that Young's claims under 42 U.S.C. § 1983 are barred from federal review by principles of state sovereign immunity found in the Eleventh Amendment to the United States Constitution.[36]

### 1. Eleventh Amendment Immunity

Unless expressly waived, the Eleventh Amendment bars an action in federal court by a citizen of a state against his or her own

---

[36]TDCJ Defendants' Motion to Dismiss, Docket Entry No. 29, pp. 4-5; UTMB Defendants' MSJ, Docket Entry No. 39, pp. 12-13.

-13-

state, including a state agency. See Will v. Michigan Dep't of State Police, 109 S. Ct. 2304, 2309 (1989). The Eleventh Amendment also bars a federal action for monetary damages against state officials when the state itself is the real party in interest. See Pennhurst State Sch. & Hosp. v. Halderman, 104 S. Ct. 900, 908-09 (1984). A suit against a state official in his or her official capacity is considered a suit against the state itself. See Will, 109 S. Ct. at 2312 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the state itself.")(internal citations omitted).

Texas has not waived its Eleventh Amendment immunity and Congress did not abrogate that immunity when it enacted 42 U.S.C. § 1983. See NiGen Biotech, L.L.C., v. Paxton, 804 F.3d 389, 394 (5th Cir. 2015) (citing Quern v. Jordan, 99 S. Ct. 1139, 1145 (1979)). As a result, TDCJ and UTMB are immune from suit and its employees are also entitled to immunity from any claim for monetary damages against them in their official capacity.[37]  See Loya v.

---

[37]The Eleventh Amendment also precludes claims for injunctive relief against the state or a state agency. See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 113 S. Ct. 684, 688 (1993) (explaining that the "narrow" exception carved out in Ex parte Young, 28 S. Ct. 441 (1908), applies "only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past . . . and has no application in suits against the States and their agencies, which (continued...)

-14-

Texas Department of Corrections, 878 F.2d 860, 861 (5th Cir. 1989) (per curiam) ("[TDCJ's] entitlement to immunity under the [E]leventh [A]mendment is clearly established in this circuit."); Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2001) ("[T]he Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity."). Therefore, these claims must be dismissed for lack of subject matter jurisdiction.

## 2. **"Persons" Subject to Suit Under 42 U.S.C. § 1983**

TDCJ and UTMB note further that as state agencies entitled to immunity under the Eleventh Amendment they cannot be sued under 42 U.S.C. § 1983.[38] As these defendants correctly note, a plaintiff seeking relief under 42 U.S.C. § 1983 must establish that a constitutional violation was "committed by a person acting under color of state law." Pratt v. Harris County, Tex., 822 F.3d 174, 180 (5th Cir. 2016) (internal quotation marks and citation omitted) (emphasis added). Consistent with principles of immunity found in the Eleventh Amendment, state agencies and employees acting in their official capacities are not "persons" within the meaning of

---

[37](...continued)
are barred regardless of the relief sought" (internal citations omitted)). Young does not otherwise show that he is entitled to injunctive relief against any of the officials named in his Complaint because for reasons discussed further below he fails to establish an actionable violation of his civil rights.

[38]TDCJ Defendants' Motion to Dismiss, Docket Entry No. 29, p. 5; UTMB Defendants' MSJ, Docket Entry No. 39, p. 13.

§ 1983. See Will, 109 S. Ct. at 2309 (concluding that "a State is not a 'person' within the meaning of § 1983"); see also Copeland v. Livingston, 464 F. App'x 326, 330 (5th Cir. March 13, 2012) (per curiam) (observing that "[s]ection 1983 does not provide a cause of action against states or state employees in their official capacities for damages")(citations omitted). For this additional reason, Young's claims against TDCJ, UTMB, and the individual defendants in their official capacities must be dismissed for failure to state a claim under 42 U.S.C. § 1983.

## B.  **Exhaustion of Administrative Remedies**

The UTMB Defendants argue that all of Young's claims must be dismissed because he failed to exhaust available administrative remedies as to each claim raised in this suit.[39]  Because this case is governed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), Young was required to exhaust administrative remedies before filing his suit involving prison conditions.[40]  See Woodford

---

[39]UTMB Defendants' MSJ, Docket Entry No. 39, pp. 13-15.

[40]Section 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

v. Ngo, 126 S. Ct. 2378, 2382-83 (2006) (citing Porter v. Nussle, 122 S. Ct. 983, 988 (2002); Booth v. Churner, 121 S. Ct. 1819, 1825 (2001)); see also Jones v. Bock, 127 S. Ct. 910, 918-19 (2007) (confirming that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

TDCJ has a formal two-step administrative grievance process. See Johnson v. Johnson, 385 F.3d at 503, 515 (5th Cir. 2004).   A Step 1 grievance, which is reviewed by officials at the inmate's assigned facility, must be filed within fifteen days of the alleged incident or challenged event.  See Johnson, 385 F.3d at 515.  Once an inmate receives a response to his Step 1 grievance, he then has ten days to file a Step 2 grievance to appeal an unfavorable result at the state administrative level.  See id.

The Fifth Circuit takes "'a strict approach' to the exhaustion requirement," demanding proper compliance with administrative grievance procedures. Butts v. Martin, 877 F.3d 571, 582 (5th Cir. 2017) (quoting Days v. Johnson, 322 F.3d 863, 866 (5th Cir. 2003)). A Texas prisoner must pursue a grievance through both steps of the process to satisfy the exhaustion requirement.  See Johnson, 385 F.3d at 515 (citation omitted).  Substantial compliance with this process is not enough to exhaust remedies under the PLRA.  See Dillon v. Rogers, 596 F.3d 260, 268 (5th Cir. 2010).  Because pre-filing exhaustion is mandatory, a case must be dismissed if

-17-

available administrative remedies were not exhausted. See Gonzalez v. Seal, 702 F.3d 785, 788 (5th Cir. 2012) (noting further that "[d]istrict courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint").

The UTMB Defendants have provided Young's grievance records for the period of time relevant to this suit.[41] They contend that this evidence shows that Young failed to exhaust remedies regarding any of his claims under the Eighth Amendment, the ADA, and the RA.[42] The UTMB Defendants argue, therefore, that all of Young's claims are subject to dismissal for lack of exhaustion.[43]

Young maintains that he did exhaust available remedies and points to a Step 1 Grievance that he filed on May 30, 2017, as proof of exhaustion.[44] In that Step 1 Grievance Young complained of delay by officials at the Pack Unit in scheduling transportation for follow-up visits at the UTMB Hospital between March 2016, and October 2016.[45] The record reflects, however, that this Step 1

---

[41]See UTMB Defendants' MSJ, Exhibit A, Docket Entry Nos. 40-1, 40-2, 40-3, and 40-4 (containing Bates Nos. 000001 to 000564).

[42]UTMB Defendants' MSJ, Docket Entry No. 39, pp. 14-15.

[43]Id. at 15.

[44]Plaintiff's Response to UTMB Defendants' MSJ, Docket Entry No. 49, pp. 6-7, 10.

[45]Exhibit I to Plaintiff's Response to UTMB Defendants' MSJ, Docket Entry No. 49-1, pp. 44-46 (Step 1 Grievance Form with (continued...)

-18-

Grievance was returned unprocessed because the "grievable time period [had] expired."[46]  Because this Step 1 Grievance was not filed in compliance with prison procedures it does not satisfy the exhaustion requirement.  See Woodford v. Ngo, 126 S. Ct. 2378, 2387-88 (2006) (observing that the exhaustion requirement found in the PLRA, 42 U.S.C. § 1997e(a), mandates "proper exhaustion," which demands compliance with the prison system's procedural rules).

The court's own review of the grievance records confirms that Young did not complete both steps of the available administrative remedy process with regard to the claims asserted in his Complaint with one exception.  The record discloses that Young filed a Step 1 Grievance on May 25, 2018, claiming that N.P. Chukwumerije denied him adequate pain medication in the form of Gabapentin and a medical pass for a jacket to protect him from the cold during a clinic visit on May 14, 2018.[47]  That Step 1 Grievance was denied on June 26, 2018, after an investigation revealed that N.P. Chukwumerije requested the medication, but that the request was declined by the pharmacy, where Dr. Fisher approved an alternative

---

[45](...continued)
attachment).

[46]Id. at 45.

[47]Step 1 Grievance #2018140524, Docket Entry No. 40-1, pp. 49-50.

-19-

medication instead.[48]  Young filed a Step 2 Grievance to appeal the
result, repeating his request for Gabapentin, but making no mention
of his request for additional clothing.[49]  The Step 2 Grievance was
denied on August 8, 2018.[50]  Although Young's Complaint takes issue
with the denial of adequate pain medication in April 2018, the
court will consider whether he was denied adequate pain medication
in the form of Gabapentin by N.P. Chukwumerije and Dr. Fisher at
the Pack Unit in May of 2018, as asserted in the Step 1 and Step 2
grievances that were filed to exhaust this claim.

Because there is no evidence showing that Young exhausted his
administrative remedies with respect to any of his other
allegations, the UTMB Defendants are entitled to summary judgment
on all but Young's claim that he was denied Gabapentin by N.P.
Chukwumerije and Dr. Fisher in violation of the Eighth Amendment.
The court will consider the exhausted claim against N.P.
Chukwumerije and Dr. Fisher below along with Young's claims against
the TDCJ Defendants.

## C.    Denial of Adequate Medical Care

As noted above, Young claims N.P. Chukwumerije and Dr. Fisher

---

[48]TDCJ Grievance Investigation Worksheet and Documentation,
Docket Entry No. 40-1, pp. 54-68.

[49]Step 2 Grievance #2018140524, Docket Entry No. 40-1, pp. 47-
48.

[50]Id. at 48.

violated his rights under the Eighth Amendment by denying him adequate medical care in the form of Gabapentin to treat his neuropathic pain at the Pack Unit in 2018.[51] These defendants argue that they are entitled to qualified immunity because Young fails to show that he was denied medical adequate care with deliberate indifference or that a constitutional violation occurred.[52]

To establish an actionable claim for the denial of adequate medical care under 42 U.S.C. § 1983, a prisoner must demonstrate that prison officials violated the Eighth Amendment by acting with "deliberate indifference to a prisoner's serious illness or injury[.]" Estelle v. Gamble, 97 S. Ct. 285, 291 (1976). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 114 S. Ct. 1970, 1984 (1994).

The Eighth Amendment deliberate indifference standard is an "extremely high" one to meet. Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exigent circumstances." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir.

---

[51]Complaint, Docket Entry No. 1, p. 8.

[52]UTMB Defendants' MSJ, Docket Entry No. 39, pp. 18-19.

-21-

2006). A showing of deliberate indifference under these circumstances requires the prisoner to demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. (citation and internal quotation marks omitted).

The medical records show that on April 3, 2018, N.P. Chukwumerije saw Young in the clinic at the Pack Unit, where Young complained that he was not getting the pain medication prescribed by an orthopedic specialist at the UTMB Hospital.[53] Chukwumerije submitted a request for "[G]abapentin 300 mg" for neuropathic pain as recommended by the orthopedic specialist.[54] That same day Dr. Fisher deferred or declined the request, explaining that the recommended dosage was not likely to be effective.[55] Dr. Fisher noted that "comparative studies" showed that another type of "tricyclic" medication identified as Nortriptyline had been proven

---

[53]Correctional Managed Health Care ("CMHC") Clinic Notes, Docket Entry No. 39-2, p. 979 (Bates No. 0977).

[54]Id.; Electronic Message from N.P. Chukwumerije, Docket Entry No. 39-2, p. 981 (Bates No. 979) (requesting "[G]abapentin 300 mg" as recommended by "hg ortho").

[55]Electronic Message from Wanda Moore to N.P. Chukwumerije, Docket Entry No. 39-2, p. 971 (Bates No. 969) (containing the explanation from Dr. Fisher); Electronic Message to Wanda Moore from Dr. Fisher, Docket Entry No. 39-2, pp. 988-89 (Bates Nos. 986-87).

more effective and was the better option.[56]   Dr. Fisher also recommended twice daily doses of Depakote as an option to treat Young's neuropathy.[57]

On July 28, 2018, Young submitted an I-60 request to Dr. Avila, requesting Gabapentin instead of Nortriptyline or Depakote.[58] On July 30, 2018, Dr. Avila submitted a request for a thirty-day prescription of Gabapentin.[59]   Dr. Fisher also deferred this request, noting that Gabapentin had a high potential for abuse and advising Dr. Avila to consider other options for pain.[60]  Dr. Fisher also advised discontinuing Young's prescription for Effexor and recommended Cymbalta instead.[61]

The medical records show that N.P. Chukwumerije requested Gabapentin to treat Young's neuropathic pain as recommended by the orthopedic specialist at the UTMB Hospital and that she did not

---

[56]Electronic Message to Wanda Moore from Dr. Fisher, Docket Entry No. 39-2, p. 989 (Bates Nos. 987).

[57]Id.

[58]I-60 Request, Docket Entry No. 39-2, p. 741 (Bates No. 739).

[59]Electronic Message from Dr. Avila, Docket Entry No. 39-2, p. 732 (Bates No. 730).

[60]Electronic Message from Wanda Moore to Dr. Avila, Docket Entry No. 39-2, p. 730 (containing Dr. Fisher's comments) (Bates No. 728); Electronic Message from Dr. Fisher to Wanda Moore, Docket Entry No. 39-2, pp. 720-21 (Bates Nos. 718-19).

[61]Electronic Message from Wanda Moore to Dr. Avila, Docket Entry No. 39-2, p. 730 (containing Dr. Fisher's comments) (Bates No. 728); Electronic Message from Dr. Fisher to Wanda Moore, Docket Entry No. 39-2, pp. 720-21 (Bates Nos. 718-19).

deny Young medical care.[62] Because Young does not dispute that Chukwumerije made the request on his behalf, he does not show that she violated his constitutional rights.  See Varnardo v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); McCord v. Maggio, 910 F.2d 1248, 1251 (5th Cir. 1990) (upholding the dismissal of an Eighth Amendment claim where medical records document that the prisoner was not denied medical attention).

To the extent that Young faults Dr. Fisher for deferring the requests for Gabapentin made by N.P. Chukwumerije and Dr. Avila in favor of different medications, allegations of this sort implicate medical judgment and are insufficient to establish deliberate indifference in violation of the Eighth Amendment.  See Gobert, 463 F.3d at 346; see also Estelle, 97 S. Ct. at 293 (observing that whether a particular form of treatment is indicated "is a classic example of a matter for medical judgment" and that a medical decision "does not represent cruel and unusual punishment").  Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation.  See  Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999) (citing Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993)).

Although Young disagrees with Dr. Fisher's decision, a

---

[62]Electronic Message from N.P. Chukwumerije, Docket Entry No. 39-2, p. 981 (Bates No 979).

prisoner's disagreement with his medical treatment is not sufficient to state a claim under § 1983. See Ducksworth v. Macmurdo, 809 F. App'x 249, 250 (5th Cir. June 12, 2020) (per curiam) (citing Varnado, 920 F.2d at 321). Even if Dr. Fisher decided not follow the treatment recommendation made by another physician, a decision based on medical judgment does not constitute evidence of deliberate indifference. See Estelle, 97 S. Ct. at 293; Ducksworth, 809 F. App'x at 250 (citing Stewart v. Murphy, 174 F.3d 530, 535 (5th Cir. 1999)). Because Young does not demonstrate that he was denied adequate medical care with deliberate indifference by N.P. Chukwumerije or Dr. Fisher, he fails to show that a constitutional violation occurred for purposes of overcoming qualified immunity. As a result, N.P. Chukwumerije and Dr. Fisher are entitled to summary judgment on Young's claims against them.

## D.   Denial of Adequate Transportation

Young alleges that he missed several follow-up appointments at the UTMB Hospital while he was confined at the Pack Unit between March 2016, and October 2016, due to transportation issues.[63] Young alleges that he also missed "specialty clinic appointments" between October 2016, through September 2017, for lack of transportation.[64] Young contends that the following supervisory officials violated

---

[63]Complaint, Docket Entry No. 1, p. 7.

[64]Id. at 9.

-25-

his constitutional rights by failing to ensure that he had adequate transportation to medical appointments in a wheelchair van, which denied or delayed his access to medical care with deliberate indifference to his health in violation of the Eighth Amendment: former Director Lorie Davis, TDCJ Health Services Director Lannette Linthicum, Warden Herrera, and Assistant Warden Bilnoski.[65]  Young alleges in particular that Warden Herrera failed to ensure that the Pack Unit had a wheelchair van to transport him when necessary.[66]

The defendants argue that Young's allegations do not overcome their entitlement to qualified immunity from his claims against them as supervisory officials.[67]  It is well established that a supervisor may not be held liable for a civil rights violation under a theory of respondeat superior or vicarious liability. Monell v. Dep't of Social Svcs. of City of New York, 98 S. Ct. 2018, 2036 (1978).  Because vicarious liability is inapplicable in an action under 42 U.S.C. § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009).

Supervisory officials can be held liable only if the plaintiff

---

[65]Plaintiff's MDS, Docket Entry No. 8, pp. 11-19.

[66]Id. at 12; Plaintiff's Response to Defendants Amicus Curiae Martinez Report, Docket Entry No. 23, p. 5.

[67]TDCJ Defendants' Motion to Dismiss, Docket Entry No. 29, pp. 6-11.

demonstrates either one of the following:   (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the deprivation.   See Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987).   There must be an affirmative link between the alleged injury and the defendant's conduct.   See id. at 304; see also Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) (citing Rizzo v. Goode, 96 S. Ct. 598, 604 (1976)).   In the absence of personal participation in an offensive act a supervisor cannot be held liable unless he implements a policy "so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"   Thompkins, 828 F.2d at 304 (quotations omitted).

Young acknowledges that he is suing former Director Davis, Director Linthicum, Warden Herrera, and Assistant Warden Bilnoski based on their "supervisory roles."[68]   When asked to clarify his allegations, Young responded that these officials "caused, created, authorized, condoned, ratified, approved and/or knowingly acquiesced" in "illegal, unconstitutional, and inhumane conditions" as a matter of policy and practice.[69]   Beyond this recital, Young does not provide facts showing that any of these supervisory officials were personally involved in arranging for his

---

[68]Complaint, Docket Entry No. 1, p. 12.

[69]Plaintiff's MDS, Docket Entry No. 8, pp. 11-14.

-27-

transportation to outside medical appointments or that he was denied transportation as the result of any particular deficient policy.[70] Young does not otherwise allege facts showing that any of the supervisory officials had actual knowledge of a problem because, according to the pleadings, Young only notified "medical" providers about the failure to provide transportation to his clinic appointments.[71]

A plaintiff suing government officials "must allege specific conduct giving rise to a constitutional violation." Oliver, 276 F.3d at 741 (citation omitted). "This standard requires more than conclusional assertions[.]" Id. Young's pleadings, which consist of little more than threadbare recitals and conclusory statements, are insufficient to state a claim for relief against the supervisory officials in this case. See Iqbal, 129 S. Ct. at 1949 (citing Twombly, 127 S. Ct. at 1965).

In an effort to establish personal involvement, Young argues that he notified Director Linthicum in a letter of "the difficulties with being provided adequate transportation" to off-site medical appointments.[72] Young makes no mention of the letter in his pleadings. Review of the letter shows that it is not dated

---

[70]See id.

[71]Complaint, Docket Entry No. 1, p. 12.

[72]Plaintiff's Response to TDCJ Defendants' Motion to Dismiss, Docket Entry No. 33, p. 8.

or signed by Young and there is no indication that it was received by Director Linthicum before Young filed this lawsuit.[73] Young complains only that was transported to off-site medical appointments in a "multi-person vehicle" on two occasions in 2014, when a wheelchair van was not available.[74] Young does not indicate that he was prevented from attending an appointment due to the lack of transportation or that he suffered any harm as a result of the transportation that was provided.[75] Because the letter makes no mention of missing appointments as the result of transportation issues, Young does not demonstrate that Director Linthicum was afforded adequate notice of the issues raised in the Complaint or that she disregarded those issues with deliberate indifference.

Young argues further that Assistant Warden Bilnoski had notice because he responded to an unspecified Step 1 grievance,[76] and that Warden Herrera was also notified of the problem in this same manner.[77] Young does not provide specific facts in support of this allegation and the record does not disclose any. As noted above, the record contains a Step 1 Grievance regarding the transportation

---

[73]Exhibit to Plaintiff's Response to TDCJ Defendants' Motion to Dismiss, Docket Entry No. 33, pp. 20-21.

[74]Id.

[75]Id.

[76]Plaintiff's MDS, Docket Entry No. 8, p. 13.

[77]Plaintiff's Response to TDCJ Defendants' Motion to Dismiss, Docket Entry No. 33, p. 8.

issues that Young experienced between March and October of 2016, which was returned unprocessed because Young filed it after his deadline to complain had expired.[78]   The record further reflects that this Step 1 Grievance was returned by a unit grievance investigator (Ms. A. Oliver) and not Assistant Warden Bilnoski or Warden Herrera.[79]

Although Young references several other grievances that he submitted in 2015, none of them demonstrate that the supervisory officials who are named as defendants knew he was having transportation issues.[80]   Only one of those grievances is signed by a defendant in this case, Assistant Warden Bilnoski, who reviewed a Step 1 Grievance that Young filed to challenge a prison disciplinary conviction for refusing a medical appointment because he did not want to travel in a multi-person vehicle.[81]   Assistant Warden Bilnoski determined that there was sufficient evidence to support the disciplinary charge and that there was "no valid

---

[78]Exhibit I to Plaintiff's Response to UTMB Defendants' MSJ, Docket Entry No. 49-1, pp. 44-46 (Step 1 Grievance Form with attachment).

[79]Id. at 45-46.

[80]Plaintiff's Response to TDCJ Defendants' Motion to Dismiss, Docket Entry No. 33, p. 7 (referencing Exhibits P, Q, R, and S, which are attached to Plaintiff's Response to Defendants' Amicus Curiae Martinez Report, Docket Entry No. 23).

[81]Step 1 Grievance #2015137859, Docket Entry No. 23, pp. 19-20.

-30-

reason" to overturn the disciplinary case.[82]  The Step 2 Grievance
that Young filed to challenge the result was returned unprocessed
because he did not file it within the deadline to appeal.[83]  These
grievances, which were filed well before Young broke his left femur
in December of 2015, are insufficient to support Young's assertion
that the defendants knew he was denied transportation to obtain
medical care for that injury, but intentionally disregarded the
problem.

Because Young does not allege facts demonstrating the
requisite personal involvement with a constitutional violation, he
does not establish that any of the individual TDCJ Defendants
violated his constitutional rights under the Eighth Amendment and
he does not overcome their entitlement to qualified immunity.
Accordingly, Young's claim that former Director Davis, Director
Linthicum, Warden Herrera, and Assistant Warden Bilnoski violated
the Eighth Amendment by denying him access to adequate
transportation to medical appointments will be dismissed for
failure to state a claim upon which relief can be granted.

## E.   Failure to Train or Supervise

Young contends that supervisory officials employed by TDCJ
also violated his constitutional rights by failing to "draft,

---

[82]Id. at 20.

[83]Step 2 Grievance #2015137859, Docket Entry No. 23, pp. 21-22.

-31-

adopt, and implement governing policies and procedures necessary to protect inmates with serious medical conditions/needs and provide transportation for disabled offenders to off-site specialty clinic appointments."[84]   When asked for clarification, Young identified Warden Herrera and Assistant Warden Bilnoski as supervisory officials at the Pack Unit who failed to provide adequate supervision and training.[85]

To state a claim in this context, a plaintiff must allege facts showing that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Goodman v. Harris County, 571 F.3d 388, 395 (5th Cir. 2009) (quoting Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir. 1998)).  For a supervisor to be liable for failure to train, "the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." Snyder v. Trepagnier, 142 F.3d 791, 798 (5th Cir. 1998) (citation omitted).  "[F]or liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." Roberts v. City of Shreveport, 397 F.3d 287, 293 (5th Cir. 2005)

---

[84]Complaint, Docket Entry No. 1, p. 14.

[85]Plaintiff's MDS, Docket Entry No. 8, pp. 24-25.

(citing <u>Benavides v. County of Wilson</u>, 955 F.2d 968, 973 (5th Cir. 1992)).

Young does not allege facts showing that Warden Herrera or Assistant Warden Bilnoski have failed to supervise or train any particular subordinate employee. Likewise, Young does not identify a particular training program or allege with specificity how any defect in that program has resulted in the violation of his constitutional rights. Because Young has not otherwise alleged facts showing that Warden Herrera or Assistant Warden Bilnoski had notice of the problems outlined in his Complaint, he does not show that any failure to train or supervise amounts to deliberate indifference. Absent a showing that any of the individual supervisory officials named as defendants in this case violated his constitutional rights by failing to supervise or train subordinate employees, Young does not overcome their entitlement to qualified immunity and his claim that the defendants failed to train or supervise employees will be dismissed.

## F. Claims Under the ADA and RA

Young also contends that TDCJ, Director Linthicum, Warden Herrera, and Assistant Warden Bilnoski violated his rights under the ADA and RA by failing to ensure that he had access to a safe mode of transportation that was appropriate to accommodate his

-33-

disability.[86] He appears to seek an injunction directing officials
to ensure that he has access to transportation to off-site medical
appointments in a wheelchair van, rather than a multi-person
vehicle, which Young believes is less safe.[87]   The TDCJ Defendants
argue that Young fails to articulate a valid claim under the ADA or
the RA.[88]

Title II of ADA prohibits "disability discrimination in the
provision of public services."   Frame v. City of Arlington, 657
F.3d 215, 223 (5th Cir. 2011).   Specifically, Title II of the ADA
provides that "no qualified individual with a disability shall, by
reason of such disability, be excluded from participation in or be
denied the benefits of the services, programs, or activities of a
public entity, or be subjected to discrimination by such entity."
42 U.S.C. § 12132.   Similarly, the RA prohibits discrimination
against individuals with disabilities in federally-funded
institutions.   See 29 U.S.C. § 794(a).

The same legal standards apply to both the ADA and the RA.
See Kemp v. Holder, 610 F.3d 231, 234 (5th Cir. 2010).   To
establish a viable claim, a plaintiff must show that (1) he is a
qualified individual with a disability; (2) he is being denied the

---

[86]Complaint, Docket Entry No. 1, pp. 12-13, 15.

[87]See id.; Plaintiff's MDS, Docket Entry No. 8, pp. 9-10.

[88]TDCJ Defendants' Motion to Dismiss, Docket Entry No. 29, pp.
11-14.

-34-

benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) he is being discriminated against by reason of his disability. See Hale v. King, 642 F.3d 492, 499 (5th Cir. 2011); Back v. Texas Dep't of Criminal Justice Institutional Div., 684 F. App'x 356, 358 (5th Cir. 2017).

Although the ADA authorizes claims against a "public entity," it does not authorize individual liability. See Nottingham v. Richardson, 499 F. App'x 368, 376 n.6 (5th Cir. 2012) (citations omitted). Likewise, a plaintiff cannot sue an individual under the RA and cannot utilize § 1983 as a vehicle to establish individual liability. See Lollar v. Baker, 196 F.3d 603, 609-10 (5th Cir. 1999); but see Cooper v. Hung, 485 F. App'x 680, 685 (5th Cir. 2012) (per curiam) (distinguishing claims under the ADA and RA against an individual in his or her official capacity). Accordingly, Young fails to state a claim under the ADA or the RA against any of the defendants who are sued in their individual capacities.

To the extent that Young asserts claims against TDCJ or any of the defendants in their official capacity, he does not allege facts showing that the defendants violated his rights by offering transportation in a multi-person vehicle when a wheelchair van was not available or that he was denied transportation to medical appointments because of his disability. Absent a showing that

-35-

Young was discriminated against or adversely treated by reason of a disability, he fails to establish a claim under the ADA and RA. See Davidson v. Texas Dep't of Criminal Justice, 91 F. App'x 963, 965-66, 2004 WL 542206, at *2 (5th Cir. 2004) (affirming dismissal of an inmate's ADA claim because he failed to allege or show that he was adversely treated solely by reason of a disability); Hay v. Thaler, 470 F. App'x 411, 418, 2012 WL 2086453, at *4 (5th Cir. 2012) (dismissing an inmate's claims under the ADA and RA for failing to show that the alleged discrimination was by reason of his disabilities).   Therefore, the court will grant the TDCJ Defendants' Motion to Dismiss Young's allegations under the ADA and RA for failure to state a claim.

### IV.   Conclusion and Order

Based on the foregoing, the court **ORDERS** as follows:

1.   The motion to dismiss under Fed. R. Civ. P. 12(b) filed by TDCJ, former Director Lorie Davis, Director Lanette Linthicum of the TDCJ Health Services Division, Senior Warden Robert Herrera, and Assistant Warden Donald Bilnoski (Docket Entry No. 29) is **GRANTED**.

2.   The motion for summary judgment filed by the UTMB, Director Owen Murray, Dr. Fausto Avila, N.P. Ndi Chukwumerije, Dr. Robert Friedman, N.P. Lauretta

-36-

Onwukwe, Practice Manager Anitra Lindley, Practice Manager Kolten Stoker, and Dr. Damien Fisher (Docket Entry No. 39) is **GRANTED**.

3.  Because there are no other remaining claims, this civil action will be **DISMISSED** with prejudice.

**The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties of record.**

**SIGNED** at Houston, Texas, on this 3th th day of December, 2020.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE